# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4284 | **DATE** | 6/12/2003 |
| **CASE TITLE** | Paul Monfardini vs. Dwight Quinlan, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendants' motions to strike the request for injunctive relief [60-1], [60-2], [59-1] are denied. The court will entertain further briefing regarding plaintiff's motions for injunctive relief.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 4 number of notices | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | JUN 13 2003 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | 67 |
| ✓ | Copy to judge/magistrate judge. | 6/12/2003 date mailed notice | |
| IS | courtroom deputy's initials | 03 JUN 12 PM 4:38 Date/time received in central Clerk's Office | IS mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| PAUL MONFARDINI, | |
| Plaintiff, | Case No. 02 C 4284 |
| v. | Judge Joan B. Gottschall |
| DWIGHT QUINLAN, ERIC SIECH, and VICO ASSOCIATES, INC., | Magistrate Judge Martin C. Ashman |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This case is before this Court on Defendants' motions to strike Plaintiff's request for injunctive relief.[1] For the following reasons, Defendants' motions are denied and Plaintiff's motions for a preliminary injunction and a temporary restraining order will stand.

### I. Background

**A.    The Stock Purchase Agreement**

In January of 2000, Paul Monfardini entered into a Stock Purchase Agreement with Dwight Quinlan and Eric Siech. Under the terms of the agreement, Monfardini agreed to sell seventy-five shares of Vico Associates, Inc. stock to Quinlan and seventy-five shares to Siech.

---

[1] These motions were called "Vico's Motion to Strike Injunctive Relief" and "Defendants [Quinlan and Siech's] Motion to Strike Plaintiff's Motion for Preliminary Injunction and Plaintiff's Motion for Temporary Restraining Order." For simplicity's sake, the motions will jointly be referred to as Defendants' motion to strike injunctive relief even though the Court is aware that Defendants' interests are not completely aligned in this action. *See e.g.* Vico's Motion to Strike Injunctive Relief at ¶ 1 ("Vico is not alleged by Plaintiff to be liable on the underlying contract to pay money"). However, because they give similar reasons for asking the Court to deny the motion for preliminary injunction, we will discuss the motions collectively.

In exchange for the stock, Quinlan and Siech each made down payments of $37,800.00 and each agreed to pay $214,200.00 plus interest in quarterly installments over the next ten years to Monfardini. To secure the payments, Quinlan and Siech each executed Pledge Agreements under which they pledged and granted to Monfardini a first priority security interest in the shares of Vico stock, and "all products, proceeds, revenues, distributions, dividends, stock dividends, securities, and other property, rights, and interests that [Quinlan or Siech] receives or is at any time entitled to receive on account or in respect of the same." In connection with the original transaction, Vico issued stock certificates in the names of Quinlan and Siech. These certificates are currently in the possession of Monfardini. According to Vico's attorney's representation at oral argument, if Monfardini followed procedures set forth by the Uniform Commercial Code, Vico would have no choice but to put the stock certificates in Monfardini's name. Even when combined, the Quinlan and Siech shares would only make Monfardini a minority shareholder.

Siech and Quinlan admit that they failed to make the January 1, 2002, payment as scheduled, and they have not made any subsequent payments. As a result of their non-payment, Monfardini filed this action against Quinlan and Siech on February 25, 2002. In September of 2002, Monfardini filed an amended complaint, adding Vico as a defendant. In the amended complaint, Monfardini alleges breach of contract against Quinlan and Siech in Count I, asks for turnover of collateral from Quinlan and Siech in Count II, alleges conversion by Quinlan and Siech in Count III, asks for a declaratory judgment against all Defendants in Count IV, seeks injunctive relief against all Defendants in Count V, and alleges breach of contract by Vico in Count VI.

Quinlan and Siech filed an answer and counterclaim against Monfardini alleging that Monfardini engaged in fraudulent conduct and breached his fiduciary duties to Quinlan and Siech in the sale of the stock. Specifically, they alleged that Monfardini, who was President and Chief Operating Officer of United Group, Inc., a company on which Vico depended for a substantial portion of its business, knew that United was considering substantially altering or terminating its business relationship with Vico. When United did subsequently terminate its business relationship with Vico, the value of the stock that Monfardini had sold to Quinlan and Siech dropped precipitously.

### B. The Motion for Preliminary Injunction

On October 17, 2002, Monfardini filed a motion for preliminary injunction specifically requesting that the Court: a) require Vico to pay all stockholder benefits including revenues, distributions, dividends, quarterly bonuses, "partners" salaries, performance bonuses, discretionary expenses and any other benefits due to Quinlan and Siech directly to Monfardini; b) enjoin and restrain Quinlan and Siech from exercising any voting, consensual or other powers of ownership in the contested shares of Vico stock; c) enjoin and restrain Defendants from refusing to honor the Pledge Agreements under which Monfardini was appointed attorney in fact over the Vico stock; d) enjoin and restrain Defendants from refusing to recognize Monfardini as the attorney in fact for the Vico stock, and from refusing to provide copies of the board of director and shareholder meeting minutes, notice of shareholder and board of director meetings, from refusing to allow Monfardini to participate in Vico shareholder meetings; e) establish a

nominal bond requirement; and f) grant such further relief as the Court may deem equitable and just.

Defendants responded to the motion for preliminary injunction and also filed a joint motion to strike the motion for injunctive relief. On January 23, 2003, this Court denied Defendants' motion to strike without prejudice but granted Defendants the opportunity to refile the motion along with supporting briefs which they did. At the same hearing, the Court also denied Monfardini's oral motion for a temporary restraining order (TRO), but did grant him leave to file a written motion requesting the same relief. On January 30, 2003, Monfardini filed a motion for a TRO.

The parties have filed numerous briefs and motions. But they now agree that the current issue in front of the Court is whether the request for injunctive relief is legally sufficient, i.e., is this the type of case for which injunctive relief is available.

## II. Discussion

To succeed in a motion for preliminary injunction, the movant must show as a threshold matter: 1) likelihood of success on the merits; and 2) there is no adequate remedy at law and the movant will suffer irreparable harm if the preliminary relief is denied. *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453 (7th Cir. 1995). We will address the question of whether Monfardini has demonstrated that he will suffer an irreparable injury if the injunction is not granted for which he has no adequate remedy at law. Because we answer this question affirmatively, we will entertain briefing regarding the likelihood of success on the merits and the balance of harms

to the parties and the public interest. *See id.* (only when the movant meets its initial burden must the court consider the balance of harms).

The lines between the elements of no adequate remedy at law and irreparable harm tend to be blurry. "Lack of an adequate remedy at law ordinarily means that money damages would not suffice." *Towers v. City of Chicago*, 979 F. Supp. 708, 725 n.28 (N.D. Ill. 1997). An injury is not irreparable if money alone can rectify it. *Classic Components Supply, Inc. v. Mitsubishi Elec. Am., Inc.*, 841 F.2d 163, 164-65 (7th Cir. 1988); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (an irreparable injury is "harm that cannot be prevented or fully rectified by the final judgment after trial"). Generally speaking, "'a defendant's ability to compensate plaintiff in money damages precludes issuance of a preliminary injunction.'" *Signode Corp. v. Weld-Loc Sys., Inc.*, 700 F.2d 1108, 1111 (7th Cir. 1983) (quoting *Nuclear-Chi. Corp. v. Nuclear Data, Inc.*, 465 F.2d 428, 430 (7th Cir. 1972)); *see also Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) (mere monetary injuries, however substantial, are not enough to constitute irreparable harm).

If damages are the only remedy sought at trial, the two elements of inadequate remedy at law and irreparable harm merge and the only question becomes "whether the plaintiff will be made whole if he prevails on the merits and is awarded damages." *Roland*, 749 F.2d at 386. For an award of damages at the end of trial to be inadequate such that the plaintiff would not be made whole at the end of trial, it must be "seriously deficient as a remedy for the harm suffered." *Id.* The plaintiff does not have to show that the award would be "wholly ineffectual." *Id.*

One exception to the general rule that the availability of money damages at the conclusion of trial will make the plaintiff whole is the insolvency exception. A defendant's

potential or actual insolvency is a "standard ground" for demonstrating that an award of damages is inadequate. *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 596 (7th Cir. 1985) (noting that a loss may be irreparable if the defendant's insolvency is apparent but the defendant is not yet in bankruptcy); *Roland*, 749 F.2d at 386 (noting that a damages remedy is inadequate if the defendant becomes insolvent before the final judgment is entered or collected). Whether the plaintiff will suffer irreparable harm where it is unable to collect money damages depends on the defendant's resources and the potential magnitude of the damage award after trial. *Signode*, 700 F.2d at 1111.

In the instant case, Monfardini claims that he faces an irreparable harm if the preliminary injunction is not granted because he fears he will not be able to collect from the defendants. As taken from his affidavit, Monfardini bases this fear on statements made by Quinlan and Siech to him that only the lawyers will benefit from any legal action he takes to enforce his rights, that they would never satisfy a judgment in his favor because he "couldn't get blood out of a turnip," and that he will be forced to take back the Vico stock, which is worthless to him. This appears (from Monfardini's affidavit) the most substantial of his fears that he will be unable to collect a judgment from Defendants. We find that there is no evidence to show that these statements are anything other than posturing statements made by Defendants before the commencement of litigation and are not sufficient to show imminent insolvency.

Monfardini claims the Court can freeze assets to ensure that Defendants will not secrete or dissipate such assets pending entry of a final order. *See SEC v. Householder*, No. 02 C 4128, 2002 WL 31207292, at *8 (N.D. Ill. Oct. 1, 2002) (adopting a Report and Recommendation finding that SEC's motion for a preliminary injunction to freeze defendant's assets should be

granted); *Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 696 (S.D. Tex. 2002) ("when the plaintiff creditor asserts a cognizable claim [in equity] to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the *status quo* pending judgment where the legal remedy might prove inadequate") (quoting *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489, 496 (4th Cir. 1999)). However, in *Newby*, the court denied the motion for a TRO, finding that the plaintiff had failed to "show a substantial threat that the proceeds or profits of the individual defendants' Enron trades will be unavailable to satisfy [plaintiff's] equitable claims if this temporary restraining order is not granted." 188 F. Supp. 2d at 707. In *Householder*, before freezing the defendant's assets, the court found that the defendant diverted his clients' investment funds to his own private companies, to his accounting firm, and to a church. 2002 WL 31207292, at *6. In this case, there is no evidence that Quinlan and Siech are dissipating or concealing the assets that Monfardini is attempting to freeze besides their (possibly idle) threats to Monfardini that he will be unable to collect a judgment from them.

One exception to the general rule that preliminary injunctions are not usually granted in breach of contract cases because money damages are usually available at the conclusion of case is where the damages from the breach of contract are difficult to estimate. For example, in *Walgreen Co. v. Sara Creek Property Co.*, 966 F.2d 273, 277 (7th Cir. 1992), the court affirmed the district court's grant of a permanent injunction to enforce an exclusivity clause in a lease relating to space in a shopping center. The court specifically noted that "damages would be a costly and inaccurate remedy." *Id.* This is not such a case. Monfardini can calculate to the penny his damages for the alleged breach of the Stock Purchase Agreement.

Another exception is "when the claimant has an interest in specific funds held by the debtor." *Franz v. Calaco Dev. Corp.*, 751 N.E.2d 1250, 1256 (Ill. App. Ct. 2001) (emphasis added); *Newby*, 188 F. Supp. 2d at 696. The funds sought to be frozen must have a specific relationship to the case and must be the funds in controversy between the parties. *Kurti v. Silk Plants Etc. Franchise Sys.*, 558 N.E.2d 361, 364 (Ill. App. Ct. 1990). Defendants argue that these conditions are not met, and that freezing the proceeds of the stock (such as the partners' salaries, the expense reimbursements, and the overrides) is an improper prejudgment attachment. *See Franz*, 751 N.E.2d at 1256 (noting that an equitable attachment is "abhorrent to the principles of equitable jurisdiction").

While at first glance the proceeds do appear to be fungible cash rather than freezable assets, Defendants are ignoring the effect of the Pledge Agreements. The Pledge Agreements create a specific security interest, not just in the shares of Vico stock, but in the "products, proceeds, revenues, distributions, dividends, stock dividends, securities, and other property, rights, and interests that [Quinlan or Siech] receives or is at any time entitled to receive on account or in respect of the same." These agreements confer specific property interests upon Monfardini in the proceeds of the stock. *See Kurti*, 558 N.E.2d at 364 (holding that plaintiff must assert a cognizable property right in the funds at issue). Any other conclusion would defeat the effect of the Pledge Agreement. Quinlan and Siech voluntarily put up the proceeds of the stock as collateral. They cannot now avoid their obligations under the Pledge Agreement by claiming that attempts to collect on the collateral is not available to Monfardini.

The Court does not find, at this juncture, that Monfardini has unduly delayed in filing or pursuing his motion for a preliminary injunction. For this reason and the reasons discussed

- 8 -

above, we find that the motions for a preliminary injunction and temporary restraining order are legally sufficient, and we will entertain further evidence before the merits of the motions are decided.

### III. Conclusion

For the foregoing reasons, Defendants' motions to strike the request for injunctive relief are denied. The Court will entertain further briefing regarding Plaintiff's motions for injunctive relief.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** June 12, 2003.

Copies have been mailed to:

| | |
|---|---|
| LISLE W. BLACKBOURN, Esq.<br>Godfrey, Leibsle, Blackbourn<br>  & Howarth, S.C.<br>11 North Wisconsin Street<br>Post Office Box 260<br>Elkhorn, WI 53121<br><br>STEPHEN P. BEDELL, Esq.<br>Gardner, Carton & Douglas<br>Quaker Tower<br>191 North Wacker Drive<br>Suite 3700<br>Chicago, IL 60606-1698<br><br>Attorneys for Plaintiff | ANDREW J. MAXWELL, Esq.<br>STEVEN S. POTTS, Esq.<br>ZANE L. ZIELINSKI, Esq.<br>Law Offices of Andrew J. Maxwell<br>105 West Adams Street<br>Suite 3200<br>Chicago, IL 60603<br><br><br><br><br><br><br><br>Attorneys for Defendants |